**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


**JUAN M. WALKER,**

        **Plaintiff,**

**v.**                                                                      **Case No.  8:12-cv-1095-T-27TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

        **Defendant.**

_____/


## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Supplemental

Security Income payments.  Because the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, I recommend that it be affirmed.

### A.

Plaintiff was forty-four (44) years old at the time of his administrative hearing.  He

stands 5 feet 11 inches and weighed approximately 205 pounds.  Plaintiff has a high school

education with some college, including certificates.  Plaintiff reported past relevant work as an

electrician's helper, a multi-trades worker, a warehouse stock clerk, a shoe salesman, a dock

support person, an information specialist, and a retention specialist.  Plaintiff applied for

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for
Michael J. Astrue as the defendant in this lawsuit.

Supplemental Security Income payments in May 2009, alleging disability as of March 31, 2008, by reason of lupus with associated complications of numbness in the hands, left shoulder, and arms; tingling in both hands, arms, and shoulders; and neck problems. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was not represented by counsel at the hearing.  He testified on his own behalf.  Plaintiff's pastor, Thomas Wilson, also testified on Plaintiff's behalf.  Additionally, a vocational expert was called by the ALJ.

At the outset of the hearing, Plaintiff testified about his work history.  Plaintiff testified he had worked as a manager at a sports store; a stock clerk at a warehouse; a multi-trades worker for the school board, building floors and walls in portable classrooms; an electrician's helper; a dock support specialist for FedEx, packing new boxes; a temp agency worker; a retention specialist for a bank; and had his own beauty supply business.  Plaintiff stopped working in 2008, when he was selling beauty supplies.  Thereafter, Plaintiff attempted to work in 2010.  He worked for about three months, but was injured on the job on December 16, 2010.  A ramp gave way and dropped Plaintiff to the ground.  He injured his neck, back, and arms.  According to Plaintiff, he has been told that he cannot work or drive because he has to see an orthopedic surgeon about having surgery on his neck and arms.  He has been wearing a cervical collar since the accident.

Regarding his physical problems in 2008, Plaintiff testified to difficulty holding his bowels, joint pain, problems with walking and standing, and lupus.  Plaintiff testified that

prior to his accident, he was able to run a business, drive, care for his personal needs, and lift 90 to 100 pounds.[2]  He also had tremors in his hands at that time, but the accident made them worse.

At present, Plaintiff testified to a lot of stiffness with the "rheumatoid from the lupus."  Plaintiff stated that the pain is so bad at times that he is unable to walk much. Plaintiff is right-handed.  He has problems writing because his hands shake and hurt, and his arms are sore.  He still has tremors in both hands and wears braces on his hands.  He has problems breathing and only walks a few steps at a time before sitting down or resting.  His equilibrium may be off somewhat as well.  He needs help dressing and bathing.  He cannot push the nozzle to turn off the water in the tub.  Although he was given a twenty-pound lifting restriction after his accident, now he has been told not to do anything given the results of MRI testing.  Plaintiff does not have problems with his hearing or vision.  Plaintiff is single and lives alone in a house.  He does not receive any government assistance.  The church has been helping him financially.  (R. 32-54, 56-57).

Plaintiff's pastor testified next.  He has known Plaintiff for about nine years and sees him maybe twice a week.  The witness testified that Plaintiff was aggressive and trying to make a living despite his lupus, but his condition has deteriorated over the years.  After the accident in 2010, Plaintiff's condition took a turn for the worse.  Because he is not permitted to drive, the witness testified Plaintiff no longer comes to church.  (R. 54-56).

---

[2]Plaintiff's testimony about his functional capacity before and after his accident in December 2010 is somewhat confusing.  At one point, it appears that Plaintiff testified his disability began after the accident and not in 2008, as alleged.  *See* (R. 50).

Lastly, the ALJ took testimony via telephone from the vocational expert ("VE"), Dennis Duffin.  In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education and work history capable of performing a limited range of light exertional work.  On that hypothetical, the VE opined that an individual could perform Plaintiff's past work as a manager of a sports store, data entry clerk, retention specialist at a bank, order filler packer, and as a sales representative of beauty supplies.  The VE also opined that other work would be available, including a fast food worker, cashier, and housekeeper and/or cleaner.  A second hypothetical question assumed a person of Plaintiff's age, education and work history capable of performing a limited range of sedentary exertional work with no climbing ladders or scaffolding; avoidance of moving machinery, unprotected heights, and hazards; no commercial driving; no preparation of written reports due to an inability to hold a pen or pencil for too long; and fine and gross manipulation limited to a frequent basis bilaterally.  On that hypothetical, the VE opined that an individual could perform Plaintiff's past work as a data entry clerk and retention specialist, as well as the jobs of a surveillance and alarm systems monitor, a callout operator, and telemarketer.  (R. 58-66).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of March 4, 2011, the ALJ determined that while Plaintiff has severe impairments related to history of lupus; degenerative disc disease of the cervical spine at multiple levels; disc bulge at C5-6 with foraminal stenosis; tendinopathy of the supraspinatus tendons of the left shoulder; history of neck and low back pain; and status-post work-related

4

accident with trauma, he nonetheless had the residual functional capacity to perform a restricted range of sedentary exertional work.  Upon this finding and the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform his past relevant as a data entry clerk or retention specialist, as well as other jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 19-25).  The Appeals Council considered additional evidence and denied Plaintiff's request for review on April 30, 2012.  (R. 1-5).  Thus, the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Supplemental Security Income payments requires the claimant establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

5

demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)     The ALJ erred in failing to make a proper credibility finding as to the Claimant's testimony, and erred in improperly discrediting the Claimant's complaints of pain and subjective complaints;

(2)     The ALJ erred in determining the Claimant's RFC; and

6

(3)     The Appeals Council should have reversed the decision of the ALJ based on new and material evidence.

(Doc. 14).

Plaintiff's first two claims are addressed together.  By these claims, Plaintiff argues that the ALJ's credibility finding was a "boilerplate" statement that did not include the proper analysis required by case law and the regulations, i.e., the ALJ failed to examine the intensity, persistence, or limiting effect of Plaintiff's pain and symptoms.  To the extent that the ALJ's decision is read to include reasons for discounting Plaintiff's subjective complaints, Plaintiff argues that the reasons are insufficient because "all of the substantial evidence corroborates [Plaintiff's] allegations, . . . including the imaging evidence on file."  Next, Plaintiff argues the ALJ erred in determining Plaintiff's residual functional capacity ("RFC") by "failing to include and consider [Plaintiff's] impairments and resulting limitations, as documented in the medical evidence and testimony of record."  (Doc. 14 at 3-6).

The Commissioner counters that the ALJ properly considered Plaintiff's subjective complaints, but found them not entirely credible in light of the findings of an examining doctor, Plaintiff's work activity during the period of alleged disability, and the opinion of an nonexamining, state agency doctor.  As for the ALJ's residual functional capacity determination, the Commissioner argues that Plaintiff fails to demonstrate error in this regard because he has not produced any credible evidence, medical or otherwise, that demonstrates he was more limited than that determined by the ALJ.  (Doc. 15 at 6-13).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 416.945(a)(1);

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on

the doctor's evaluation of the claimant's condition and the medical consequences thereof.

*Lewis*, 125 F.3d at 1440.  In evaluating a claimant's residual functional capacity, the ALJ is

obliged to consider all of the claimant's impairments, including subjective symptoms such as

pain.[3]  20 C.F.R. § 416.945(a)(3).

Consideration of a claimant's subjective complaints such as pain is governed by a

three-part "pain standard" that applies when a claimant attempts to establish disability through

subjective symptoms.  *Dyer*, 395 F.3d at 1210.  Under this standard, the claimant must show

evidence of an underlying medical condition and either objective medical evidence that

confirms the severity of the alleged symptom arising from the condition or evidence that the

objectively determined medical condition is of such severity that it can be reasonably expected

to give rise to the alleged pain.[4]  *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991).  If the ALJ determines not to credit the claimant's subjective testimony, he must

articulate explicit and adequate reasons for his decision.  *Dyer*, 395 F.3d at 1210 (citing *Foote*

*v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Such reasons must be supported by

substantial evidence and "take into account and evaluate the record as a whole."  *McCruter v.*

---

[3]At this stage of the evaluation process, the burden is on the claimant to show that he
can no longer perform his past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th
Cir. 1986).

[4]Where such showing is made, the regulations dictate that the ALJ then evaluate the
intensity and persistence of the symptoms to determine how such limit the claimants capacity
for work.  20 C.F.R. § 416.929(c).  Relevant factors in this consideration include the objective
medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications
and treatments available to alleviate the symptoms, how the symptoms affect daily activities,
and past work history.  *Id*.

*Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67

F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

Here, the ALJ accurately recounted Plaintiff's testimony, and cited and applied the

correct legal authority when addressing Plaintiff's subjective complaints.  (R. 20).  He found,

however, that Plaintiff's testimony was not fully credible.  In particular, the ALJ found that

Plaintiff's medically determinable impairments could reasonably be expected to cause the

symptoms alleged, but his statements about the intensity, persistence and limiting effects of

the same were not credible to the extent they were inconsistent with a functional capacity for a

limited range of sedentary work.  (R. 21).  In support of this determination, the ALJ accurately

recounted the limited medical record and provided the following reasons:  (1) there was no

clinical or treating source support for Plaintiff's complaints; (2) clinical findings were

essentially benign; (3) Plaintiff has not received the type of medical treatment one would

expect if disabled; (4) while Plaintiff's work in December 2010 was not disqualifying

substantial gainful activity, it indicated that his abilities have at times been greater than

reported; and (5) the consulting examiner reported that Plaintiff's efforts were questionable

and opined there was no significant impairment related to Plaintiff's problems.  (R. 20-23).

As for the Plaintiff's functional capacity, the ALJ discussed the following evidence

in determining the same: (1) the report of the consulting examiner, Allison Hull, D.O., who

examined Plaintiff on August 22, 2009; (2) the January 2011 MRI results of Plaintiff's left

shoulder, right shoulder, and cervical spine; (3) a work status report from January 2011,

indicating that Plaintiff was unable to drive and had limited use of both hands; (4) the opinion

of a nonexamining, state agency doctor who opined Plaintiff was not disabled; and

(5) Plaintiff's testimony, particularly to his abilities after the December 2010 accident.  (R. 20-23).  Relying on that evidence and giving Plaintiff the benefit of the doubt to some extent, the ALJ determined that Plaintiff retained the RFC for a limited range of sedentary exertional work with no climbing of ladders, ropes, or scaffolds; only frequent (2/3 of a day) fine and gross manipulation bilaterally; no work requiring preparation of written reports secondary to hand tremors, no operating dangerous machinery; no commercial driving; and avoidance of hazards.  (R. 19).

Upon careful review of the record, I conclude that Plaintiff has not demonstrated that he is entitled to relief on these claims.  Initially, I note that Plaintiff fails to point to any particular testimony or medical evidence which is inconsistent with the challenged findings of the ALJ.[5]  Plaintiff also fails to point to specific functional limitations to which he testified and which the ALJ failed to credit.[6]  Similarly, he fails to identify any medical opinions or evidence which establishes or supports greater functional limitations than those assessed by the ALJ.  Although he summarily claims that the ALJ's credibility and RFC findings are not supported by substantial evidence in light of the imaging evidence, he utterly fails to explain

---

[5]Plaintiff's argument is devoid of any record cites to support his contentions or to demonstrate error in the conclusions by the ALJ.  Here, the failure to develop the arguments is perhaps best explained by the lack of record support for them.

[6]Aside from testifying that he was advised not to drive and "not do anything" after his accident in December 2010 and the MRIs were done in January 2011, Plaintiff does not allege any specific functional limitations nor demonstrate a record basis for such.  As the decision reflects, the ALJ credited the driving statement.  The ALJ also credited Plaintiff's complaints of difficulty with his hands, by allowing for a reduced ability to perform fine and gross manipulations.  Likewise, the ALJ appears to have credited Plaintiff's testimony that he had stiffness, joint pain, and difficulty standing/walking by limiting Plaintiff to sedentary work.

how the same undermines the ALJ's findings.  These failures alone are sufficient to warrant

denial of Plaintiff's claims.[7]  In any event, I find that the ALJ applied the correct legal analysis

in assessing the credibility of Plaintiff's subjective complaints and in determining Plaintiff's

functional capacity, and the ALJ's findings with respect to both are fully supported by

substantial record evidence.

      With regard to the credibility of Plaintiff's subjective allegations, the ALJ clearly

recognized his obligation to address the same in accordance with the governing case law,

regulations, and rulings and he cited to the same.  (R. 20).  Contrary to Plaintiff's contentions,

the decision reveals that the ALJ thoroughly discussed Plaintiff's subjective complaints and

articulated specific and adequate reasons for finding the same not entirely credible.  Further,

substantial evidence supports the ALJ's stated reasons for discounting Plaintiff's testimony to

the extent it was inconsistent with an ability to engage in a limited range of sedentary work.

First, the medical evidence in this case is slight and does not demonstrate support for

disabling subjective symptoms.[8]  Stated otherwise, a fair reading of medical evidence does not

_____

      [7]The Court's Scheduling Order states that Plaintiff must identify with particularity the
discrete grounds upon which the decision is challenged and any such challenges "must be
supported by specific citation to the pages of the record relied upon when discussing the
pertinent facts, medical evidence, and opinion evidence and by citation to governing legal
authority that supports each challenge.  Any contention for which these requirements are not
met is subject to being disregarded for insufficient development and denied without further
consideration."  (Doc. 13 at 1-2).

      [8]The medical record consists primarily of a hospital emergency room record from
April 2009 when Plaintiff sought medical attention for pain and numbness to the left
arm/hand, chest soreness, and "massive ha's" (R. 195-207, 224-33); a consultative
examination by Allison Hull, D.O., on August 22, 2009, which included objective physical
findings, but did not address specific functional limitations (R. 209-15); the results of MRIs of
Plaintiff's cervical spine and shoulders in January 2011 (R. 234-38); a work status report from
January 2011, indicating that Plaintiff was unable to drive and limited use of both arms (R.

undermine the ALJ's assessment of Plaintiff's subjective complaints.  As recognized by the

ALJ, the consulting examiner's final impression on the conduct of the exam was that she

observed "no gross impairment" related to Plaintiff's lupus, observed "no significant

impairment related" to Plaintiff's neck and low back pain, and questioned Plaintiff's effort.[9]

(R. 212).  As for the MRI reports, which revealed, among other things, disc bulges, some

stenosis, and tendinopathy in both shoulders, such findings standing alone do not undermine

the ALJ's credibility determination.  The nonmedical reasons provided by the ALJ also

support his decision to partially discount Plaintiff's subjective complaints.  For example,

Plaintiff testified that prior to his accident in December 2010 he was able to run his business

and lift 90 to 100 pounds.  That testimony stands in direct contradiction to Plaintiff's assertion

that his disability began in 2008.  His ability to work even for three months also undercuts his

testimony to the extent he alleged constant, disabling symptoms.  In sum, substantial evidence

supports the ALJ's credibility determination.

        Essentially for the same reasons, substantial evidence also supports the ALJ's RFC

determination.  Notably, the ALJ assessed a more limited RFC than that found in the medical

_____

123); and opinions from a nonexamining, state agency doctor and a single decision maker that
Plaintiff was capable of performing light exertional work (R. 71-79, 216-23).

        [9]The doctor reported that: (1) she was unable to determine if Plaintiff's alleged lupus
diagnosis was accurate; (2) while Plaintiff had mild decreased strength in his hands and legs
and significant decreased range of motion in the cervical and lumbar spine, his effort was
questionable; (3) arthritis was not demonstrated; (4) Plaintiff had a steady gait, could walk on
his heels and toes, and tandem walking was normal; (5) there were no palpable muscle
spasms; (6) straight leg raise tests were negative bilaterally; and (7) the sensory exam was
normal.  (R. 201-11).  The doctor also noted that Plaintiff could perform fine motor skills,
squat and rise from that position easily, rise from a sitting position without assistance, and get
up and down from the exam table.  (R. 211-12).  Nothing in these findings contradicts the
ALJ's assessment of Plaintiff's subjective complaints.

record.  The only RFC opinions of record were those provided by nonexamining sources and both of them opined Plaintiff could perform light work.  Contrary to Plaintiff's suggestion, the MRI reports and Dr. Hull's report do not demonstrate greater limitations than those found by the ALJ.  As for the one report indicating Plaintiff could not drive and should limit the use of both arms, the report also indicates that such a "modified duty work status" was recommended for one day only, namely, January 20, 2011.  (R. 123).  In any event, the ALJ accepted the driving limitation.  The ALJ credited Plaintiff's hand problems by limiting the amount of time Plaintiff was able to perform activities requiring fine and gross manipulation.  He also credited Plaintiff's complaints of back and neck pain to the extent he limited Plaintiff to sedentary work.  On this record, the record evidence demonstrates that the ALJ fairly assessed Plaintiff's RFC and Plaintiff fails to demonstrate otherwise.

By his last claim, Plaintiff argues that the Appeals Council erred by failing to reverse the ALJ's decision in light of new and material evidence, namely:  (1) CT myelogram discharge instructions; (2) records from Florida Orthopaedic Institute ("FOI") dated February 10, 2010; and (3) worker's compensation forms completed by FOI dated February 10, 2011, and March 31, 2011.[10]  (Doc. 14 at 6-7).

The Commissioner counters that Plaintiff fails to explain why that evidence would justify a different result than that reached by the ALJ and his failure to do so amounts to a *de facto* admission that the evidence does not alter the substantial weight of evidence relied upon

---

[10]Plaintiff also contends that MRIs from Total Imaging dated January 18, 2011, were submitted to the Appeals Council.  The Appeals Council's exhibit list, however, does not list those records.  (R. 4).  Rather, those records were before the ALJ and are discussed in his decision.  (R. 21-22).

by the ALJ.  In any event, the Commissioner contends that the Appeals Council expressly

considered this evidence and correctly determined that it did not provide a basis for changing

the ALJ's decision.  The Commissioner contends further that the evidence tends to reinforce

the ALJ's credibility determination and documents only one specific functional limitation,

which the ALJ included in his RFC determination.  (Doc. 15 at 13-15).

     When a claimant challenges the Appeals Council's consideration of new evidence,

the controlling case in this Circuit is *Ingram v. Commissioner of Social Security

Administration*, 496 F.3d 1253 (11th Cir. 2007).  As recognized in that case, aside from a few

exceptions, a claimant may submit new evidence at each stage of the administrative

proceedings.  *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.900(b)).  Where as here,

additional evidence is submitted for the first time to the Appeals Council, the Appeals Council

"must consider new, material, and chronologically relevant evidence and must review the case

if 'the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence

currently of record.'"[11]  *Id.* (citing 20 C.F.R. § 404.970(b)).[12]  When reviewing the Appeals

Council's denial of review after considering new evidence, the court considers "whether the

Appeals Council correctly decided that the '[ALJ's] action, findings, or conclusion is [not]

---

[11]"New" evidence refers to evidence that was not previously available to the ALJ.
*Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  New evidence is "material" if there is a
reasonable possibility that it would change the administrative result.  *Id.*

[12]This regulation provides, in pertinent part, that "[i]f new and material evidence is
submitted, the Appeals Council shall consider the additional evidence only where it relates to
the period on or before the date of the [ALJ] hearing decision.  The Appeals Council shall
evaluate the entire record including the new and material evidence submitted if it relates to
the period on or before the date of the [ALJ] hearing decision.  It will then review the case if it
finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence
currently of record."  20 C.F.R. § 404.970(b).

contrary to the weight of the evidence of record.'"  *Id*. at 1266-67 (citing 20 C.F.R.

§ 404.970(b)).

A summary of the evidence submitted to the Appeals Council is useful.  It pertains to

injuries Plaintiff suffered in his December 2010 work-related accident and examination he

underwent one day after the ALJ issued his decision.  To this end, Donna Du Mee, a certified

physician's assistant (PA) at Florida Orthopedic Institute, examined Plaintiff on February 10,

2011.[13]  *See* (R. 241-45).  Objective findings on examination included restricted flexion-

extension and rotation of the neck; tenderness to palpation in the neck; decreased range of

motion in the left shoulder; negative straight leg raising tests; normal motor exam; normal

sensory exam; and "poor effort, no muscle."  (R. 243).  The results of a cervical spine x-ray

and MRIs of the cervical spine, right shoulder, and left shoulder conducted on January 18,

2011, were addressed.  By that report, the diagnosis is for "displacement of cervical

intervertebral disc without myelopathy," with an impression of "cervical degenerative disc

disease with herniated nucleus pulposus."  A CT myelogram was planned.[14]  (R. 244).

The PA completed a form captioned "Florida Workers' Compensation Uniform

Medical Treatment/Status Reporting Form" on the date of the examination.  Therein, she

opined that, due to a work-related cervical herniated nucleus pulposus, Plaintiff's functional

---

[13]The report is dated February 10, *2010*.  The year 2010 clearly is a typo.  Plaintiff's accident occurred in December 2010 and the diagnostic tests discussed in the report were conducted in January 2011.  The report also mistakenly notes that Plaintiff's accident occurred in December 2011, instead of December 2010.  Further, it is unclear whether Marc Weinstein, M.D., whose name also appears on the report (R. 245), participated in the examination.

[14]It appears the CT myelogram was conducted given the undated discharge instructions (R. 240), but the results were not submitted.

15

limitations as of February 9, 2011, were of such a severity that he could not perform activities even at a sedentary level.  No specific functional limitations were noted aside from "no driving."  The PA also checkmarked a box indicating that a residual functional loss was not anticipated.  (R. 247-48).

On March 31, 2011, Dr. Weinstein completed the same form.  He also opined that Plaintiff was unable to perform even sedentary activities due to a work-related herniated nucleus pulposus.  Contrary to the PA, however, Dr. Weinstein indicated that a residual functional loss was anticipated, but he did not opine as to the nature or severity of the same.  (R. 250).  Neither the doctor nor the PA provided an impairment rating or addressed the anticipated duration of Plaintiff's inability to perform even sedentary level activities.

In light of this evidence and the arguments made by Plaintiff, I am unable to find that a remand on this basis is warranted.  Initially, insofar as Plaintiff suggests that the new evidence was not considered by the Appeals Council, the record indicates otherwise.  Here, Plaintiff submitted the records after the ALJ's decision, and these submissions were received by the Appeals Council and made a part of the record.  (R. 4).  In denying Plaintiff's request for review of the ALJ's decision, the Appeals Council stated that it had considered the additional evidence, but concluded that it did not provide basis for changing the ALJ's decision, and it identified the particular records in its exhibit list.  (R. 1-4).  In light of this, there appears no merit to the claim that the new evidence was not even considered.

As for whether this new evidence undermines the ALJ's decision to deny disability in this case, Plaintiff makes no showing that it does.  While it reveals that Plaintiff sustained work-related neck and shoulder injuries (during a time in which he contends he was disabled),

16

the evidence does not speak to further functional limitations aside from the driving restriction credited by the ALJ.  As for the findings on the workers' compensation forms that Plaintiff was unable to perform even sedentary activities, such statements without more simply do not establish that Plaintiff's functional ability was limited to the extent that he was disabled under the SSA's requirements and that he met the SSA's durational requirements.  Accordingly, I cannot agree that the whole of the evidence supports a conclusion that the ALJ's decision was wrong or that the case should be remanded for further review.[15]  Stated otherwise, I conclude that the Appeals Council correctly decided that the ALJ's findings were not contrary to the weight of the evidence of record.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
19th day of August 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

[15]To the extent Plaintiff argues the evidence submitted to the Appeals Council warrants a remand under sentence six, *see* (Doc. 14 at 7), the argument is without merit.  A remand under sentence six of 42 U.S.C. section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence *presented for the first time to the district court.  Ingram,* 496 F.3d at 1267 (emphasis added).  That is not the case here.

17

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record